**Lora A. BOARMAN, Administratrix of the Estate of George Danny Boarman, Deceased, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Transportation Cabinet, Department of Highways, and the Kentucky Board of Claims, Appellees.**

No. 1999–SC–0233–DG.

Supreme Court of Kentucky.

Feb. 22, 2001.

Ronald M. Sullivan, R. Michael Sullivan, Sullivan, Mountjoy, Stainback & Miller, P.S.C., Owensboro, Counsel for Appellant.

Clayton B. Patrick, Boyd, Watkins, Patrick & Sparks, Frankfort, Adele Burt Brown, Lexington, Counsel for Appellees.

STUMBO, Justice.

Danny Boarman, (hereinafter "Decedent" or "Danny"), was driving over a bridge in Ohio County, Kentucky, on the evening of May 21, 1995, when his vehicle was side-swiped by a trailer being pulled by Patrick H. Ammon (hereinafter "Ammon"). As a result, Danny lost control of his car and collided with another vehicle driven by Roger Barnett (hereinafter "Barnett"), who had been following Ammon. The undisputed facts show that the bridge over which Danny, Ammon, and Barnett were driving was only nineteen feet wide, more narrow than the roadway. There were no reflectors or warning signs alerting drivers to the narrowing of the bridge. Danny died nine days later from injuries sustained in this accident. He was survived by his wife, Lora (hereinafter "Lora" or "Appellant"), and a daughter, McKallen.

Shortly after his death, Lora was appointed administratrix of Danny's estate. In her capacity as administratrix, she filed a wrongful death action in the Board of Claims (hereinafter "the Board") against the Appellees, Commonwealth of Kentucky, Transportation Cabinet, Depart-

ment of Highways (hereinafter "the Cabinet"). She asserted that the Cabinet was at fault because the bridge was too narrow and the Cabinet failed to warn drivers of this danger. She asked for $4,262.00 for Danny's funeral expenses, and $1,000,000.00 for the destruction of Danny's power to earn money.

The Cabinet filed a motion to dismiss her claim on the grounds that Lora received collateral source payments, which offset any recovery in the Board of Claims, in excess of the statutory maximum amount recoverable from the Cabinet. KRS 44.070(5) provides a limited waiver of sovereign immunity for the Cabinet, but caps any recovery at $100,000.00. Further, any collateral source payments are to be deducted from the recovery from the Cabinet pursuant to KRS 44.070(1), which reads in pertinent part:

> [A]ny damage claim awarded shall be reduced by the amount of payments received or right to receive payment from workers' compensation insurance, social security programs, unemployment insurance programs, medical, disability or life insurance programs, or other federal or state or private program designed to supplement income or pay claimant's expenses or damages incurred.

The collateral source payments received by Lora, as set out in the Appellant's brief, are as follows:

(1) $25,000 was paid to Lora, as administratrix of Danny's estate, by OMNI Insurance Company to settle the estate's claim against Barnett, OMNI's insured.

(2) $25,000.00 was paid to Lora, as administratrix of Danny's estate, by Allstate Insurance Company to settle the estate's claim against Ammon.

(3) Blue Cross Blue Shield of Kentucky paid medical bills resulting from treatment of Danny totaling $61,467.23.

(4) Grange Mutual Casualty Company, Danny's no-fault insurance carrier, paid Lora, as administratrix of Danny's estate, $10,000.00 in basic reparation benefits. $1,000.00 of this amount was designated for funeral expenses, and the remaining $9,000.00 was compensation for "survivor's replacement loss" as defined in KRS 304.39–020(5)(e).

(5) Lora, individually, received proceeds from a life insurance policy on Danny in the amount of $100,000.00. Lora obtained this policy through her employer, General Electric Company.

Without a hearing, the Board summarily dismissed Lora's claim on the basis that the collateral source payments exceeded the maximum statutory award, but did not enumerate which payments it considered as setoffs. The Ohio Circuit Court affirmed the Board, stating that all collateral source payments could be used as setoffs, except for the settlements from the tortfeasors, Barnett and Ammon.[1] The Court of Appeals, in affirming the circuit court, also found that Lora could not recover from the Cabinet because her collateral payments exceeded the maximum amount recoverable. The Court of Appeals, however, based its opinion merely on the life insurance alone, holding that since the life insurance payment in itself was $100,000.00 and the maximum recoverable from the Cabinet was $100,000.00, there was no need to consider the other payments. We granted discretionary review, and now reverse in part and affirm in part.

## I. LIFE INSURANCE PROCEEDS

In an effort to determine whether the life insurance proceeds given to Lora, individually, should offset the amount re-

---

1. It is well-settled that the Cabinet cannot use voluntary settlements with joint tortfeasors as on offset. *Transportation Cabinet v. Thurman,* Ky., 897 S.W.2d 597 (1995); *Central Kentucky Drying Co. v. Department of Housing,* Ky., 858 S.W.2d 165 (1993).

covered from the Cabinet, we first need to determine to whom does the word "claimant" refer in KRS 44.070(5). The Appellant argues that "claimant" refers to her as administratrix of her husband's estate, not herself individually. The life insurance policy at question was bought through her place of employment, and she, personally, was the beneficiary—not her husband's estate. The Cabinet counters that this is a legal distinction without a difference, and proceeds paid from the policy are the same as those damages which she, as Administratrix, could recover for herself in the wrongful death action.

We believe, however, that this distinction is a large and important one. Appellant maintains that her capacity as administratrix is completely separate from her role as an individual and widow of Danny. She illustrates the difference by analogizing the situation where a bank, friend, or attorney could have been appointed administrator of the estate, or, on the other hand, Danny's employer or some other interested party could have been the beneficiary of the life insurance policy. If this were the case, there would be no question that the life insurance was not a collateral source payment. It makes no difference that, in this case, Lora Boarman happens to assume both duties. We find that the "claimant," as it is referred to in the statute, is Lora in her capacity as administratrix. As a result, we find that where the life insurance beneficiary is not the estate, but the widow individually, it is not proper to offset the recovery from the Cabinet.

## II. MEDICAL EXPENSES

■ Appellant maintains that because she did not bring a claim for personal injury against the Cabinet, her medical expenses should not be offset from her recovery. She argues that the damages associated with personal injuries, i.e, the medical expenses, are not the "damages incurred" in a wrongful death action. Appellant urges that she has "recovered" once for the medical expenses, and therefore did not choose to bring a claim for them. Since the intent of KRS 44.070(1) is to prevent double recovery, the damages recovered for personal injuries should not be offset from the damages in her wrongful death action.

The Cabinet argues that KRS 44.070(1) does not make a distinction with regard to reductions where a claim has, or has not, been made. In fact, the statute reads, "any damage claim awarded shall be reduced by the amount of payments received or *right to receive* payment... designed to supplement income or pay claimant's expenses or damages incurred." (emphasis added). Just because Appellant does not choose to assert her right to recover damages for personal injury in her claim against the Board does not mean that she could not. We believe the intent of the General Assembly was to offset any payments relating to the accident which are received by the claimant, who, in this case, is Lora Boarman, as Administratrix. As Lora received the medical expenses payments, which are intended to compensate the estate for damages incurred, in her capacity as Administratrix, we find that they should be offset from the damages recovered from the Cabinet.

## III. BASIC REPARATION BENEFITS

■ Appellant received $10,000.00 in no-fault benefits, of which $1,000.00 were for funeral expenses. Appellant concedes that the reimbursement for funeral expenses should be offset, so the remaining $9,000.00 is at issue. Appellant argues that the $9,000.00 received as survivor's replacement services loss benefits (BRB) did not compensate her for the same damages that are sought in a wrongful death action, and therefore should not be setoff. She argues that this Court specifically enumerated this principle in *Luttrell v. Wood,* Ky., 902 S.W.2d 817 (1995). We held in *Luttrell* that survivor's replacement services loss benefits were not a recoverable element of damages in a

wrongful death action. *Id.* at 818. Our reasoning was based, however, on the wrongful death statute, not the offset provisions of the Kentucky Board of Claims Act. Further, in *Commonwealth v. Roof,* Ky., 913 S.W.2d 322 (1996), a case subsequent to *Luttrell,* we were called upon to interpret the same statute at issue here, KRS 44.070(1). In *Roof,* we held this statute to encompass basic reparation benefits. *Roof,* 913 S.W.2d at 324.

Appellant urges us to revisit and overrule *Roof.* While we still believe that the result seems unfair, we also still conclude that the intent of the General Assembly is clear, and we are bound by their words. As we reiterated in *Roof,* "the Commonwealth is under no obligation to make payment to injured parties because of the protections provided by the doctrine of sovereign immunity. Ky. Const. § 231. It is the province of the General Assembly to waive immunity, if at all, and only to the extent it sees fit." *Id.* at 325.

For the foregoing reasons, the decision of the Court of Appeals is reversed in part and affirmed in part. We remand for proceedings consistent with this opinion.

LAMBERT, C.J.; COOPER, GRAVES, JOHNSTONE, KELLER, and WINTERSHEIMER, JJ., concur.

STUMBO, J., concurs as to Part I. only.

STUMBO, Justice, dissenting.

Respectfully, I must dissent.

I join the majority in their holding that the life insurance in this case should not be offset from Appellant's recovery. I would go further, however, and also prevent the Cabinet from offsetting the medical expenses and the basic reparation benefits.

## MEDICAL EXPENSES

As personal representative of Danny's estate, Lora had a choice to bring either a wrongful death action against the Cabinet, a personal injury action against the Cabinet, or both. She brought only a wrongful death action. In a wrongful death action, the damages recoverable are funeral expenses and damages that will fairly and reasonably compensate the decedent's estate for the destruction of his power to earn money. Medical expenses are usually not a recoverable damage in such an action for obvious reasons. This case was unusual because Danny lived nine days before he died of the injuries sustained in the accident.

If Lora had chosen to bring a personal injury action against the Cabinet, the damages recoverable would be lost earnings, pain and suffering, and medical expenses, and the medical expenses recovered from her insurance would arguably be setoff from her recovery from the Cabinet. However, that is not the case here. Lora chose to bring only a wrongful death action. As stated above, medical expenses are not a recoverable damage in a wrongful death action. I believe this precludes the Cabinet from deducting these expenses from Lora's recovery.

## BASIC REPARATION BENEFITS

As stated in the majority opinion, I believe *Commonwealth v. Roof,* Ky., 913 S.W.2d 322 (1996) prevents us from holding that the basic reparation benefits should not be offset from the Appellant's recovery. As such, I would revisit and overrule *Roof.* At issue in *Roof* was whether collateral source payments are to be deducted from the $100,000.00 cap or the total damages sustained. The majority held that they are to be deducted from the $100,000.00 cap. Therefore, even if a claimant has $3,000,000.00 worth of damages, but receives $100,000.00 of collateral source payments, she is precluded from any recovery from the Cabinet, even if the $100,000.00 collateral source payment is the only recovery she will receive. The majority agreed that this result seemed unfair and the argument that the collateral source payments should be deducted from the total damages appealed to their "sense of equity." However, they believed that

the intent of the General Assembly was clear, and we were bound by their words.

I agree that the General Assembly's intent is clear, and it is clearly not how the majority interpreted it. I agree with Justice King's interpretation in the *Roof* opinion, articulated in his· dissent in which I joined:

> The clear intent of KRS 44.070(1) is to preclude an injured party from receiving a double recovery thereby being unjustly enriched. Thus, the statute requires "a reduction in the amount of the award only when certain itemized collateral sources duplicate payment for the damages awarded." Interpreting KRS 44.070(1) to require a reduction in an award when there is no double recovery, leads to an unjust and unduly harsh result.

*Id.* at 326.

Appellant concedes that the reimbursement for funeral expenses she received should be offset, but I believe the $9,000.00 received as survivor's replacement services loss benefits (BRB) should not be setoff, as it did not compensate her for the same damages that are sought in a wrongful death action. We enunciated this principle in the case of *Luttrell v. Wood,* Ky., 902 S.W.2d 817 (1995), and I stand by its holding. The majority claims that *Luttrell* is distinguishable because that case was based on an interpretation of the wrongful death statute. However, if we look to the intent of the statute at issue here, which is to prevent double recovery, the same result should follow. As we said in *Luttrell,* wrongful death damages are those meant to replace the power of the decedent to earn money. The BRB damages here are the same as they were in *Luttrell,* meant to compensate for the ordinary and necessary services that come with day-to-day family life. As these damages are not the same as wrongful death damages, they should not qualify as a damage award under KRS 44.070(1).

Accordingly, I would reverse the Court of Appeals opinion in its entirety, and dis-

allow the offset of the medical expenses and the BRB payments made to Lora Boarman.